MDA



# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 15-00102-CB |
| | : USAO No.: 14R00542 |
| DSD SHIPPING, AS, | : Violations: |
| DANIEL PAUL DANCU, | : |
| BO GAO, | : 18 U.S.C. § 371 |
| XIAOBING CHEN, and | : 33 U.S.C. § 1908(a) |
| XIN ZHONG | : 18 U.S.C. § 1519 |
| | : 18 U.S.C. § 1512(b) |
| Defendants | : 18 U.S.C. § 1505 |
| | : 18 U.S.C. § 2 |

## CRIMINAL INDICTMENT

### Introduction

The Grand Jury charges:

At all times relevant to this Criminal Indictment:

**A.    The Corporate Defendant**

1.    Defendant **DSD SHIPPING, AS,** (DSD) was a corporation located in Singapore and Norway. DSD was the owner and operator of the oil tanker *Stavanger Blossom* (*M/T Stavanger Blossom*). The charges in this case arise, by and through the acts and omissions of DSD's agents and employees, who were acting within the scope of their agency and employment and for the intended benefit, at least in part, of DSD.

1

## B. The Individual Defendants

2. Defendant, **DANIEL PAUL DANCU**, was a citizen of Romania who served as the Chief Engineer on the *M/T Stavanger Blossom* from on or about August 25, 2014, until on or about November 12, 2014. As Chief Engineer, the defendant was the highest ranking Engine Department officer aboard the vessel.

3. Defendant, **BO GAO**, was a citizen of China who served as the Chief Engineer on the *M/T Stavanger Blossom* from on or about May 24, 2014, until on or about August 24, 2014. As Chief Engineer, the defendant was the highest ranking Engine Department officer aboard the vessel.

4. Defendant, **XIAOBING CHEN**, was a citizen of China who served as the Second Engineer on the *M/T Stavanger Blossom* from on or about August 25, 2014, until on or about November 12, 2014. As Second Engineer, the defendant was the second highest ranking Engine Department officer aboard the vessel.

5. Defendant, **XIN ZHONG**, was a citizen of China who served as the Fourth Engineer on the *M/T Stavanger Blossom* from on or about June 17, 2014, until on or about November 12, 2014. As Fourth Engineer, the defendant was an Engine Department officer and supervised other engineering crewmembers.

## C. The M/T Stavanger Blossom

6. The *M/T Stavanger Blossom* was a 56,172 gross ton ocean-going oil tanker. The *M/T Stavanger Blossom* was approximately 784 feet in length, was registered in Singapore, and had an International Maritime Organization (IMO) number of 9337389.

7. The *M/T Stavanger Blossom* was headed by a Captain or Master, who was

responsible for the overall operation of the ship including safety, pollution prevention, maintenance, scheduling, loading and reporting.

8. The *M/T Stavanger Blossom* had an Engine Department headed by a Chief Engineer, who was assisted by a Second Engineer, a Third Engineer, a Fourth Engineer, a Motorman, an Oiler, a Fitter, a Wiper, and an Engine Cadet. The Chief Engineer reported directly to the Master of the vessel and had overall responsibility for the operation of the Engine Department, including the supervision of daily operations, formulation and implementation of Engine Department procedures. These procedures included tracking the disposal and transfer of sludge, oil residue, oily mixtures, and machinery space bilge water from the vessel and making entries into an Oil Record Book.

9. The Second Engineer aboard the *M/T Stavanger Blossom* reported directly to the Chief Engineer and directly supervised the Engine Department, including the Third and Fourth Engineers. The Fourth Engineer was responsible for the operation of the ship's oily water separator and incinerator, and supervised the daily sounding of engineering storage tanks aboard the vessel. The Fourth Engineer provided tank soundings to the Chief Engineer for entry into the Oil Record Book. Both the Second and Fourth Engineers received training pertaining to the requirements for the Oil Record Book and Garbage Record Book.

10. The operation of large marine vessels like the *M/T Stavanger Blossom* generates large quantities of sludge, oil residue, oily mixtures, and machinery space bilge water:

    A. Sludge is generated during the process of purifying fuel oil, lubricating oil, and other petroleum products, so that these products can be used in the engines aboard the vessel. The sludge generated as a result of this process is stored aboard the vessel in sludge

tanks. Sludge may properly be disposed of either by incineration aboard the vessel or by offloading it at a port through the use of a licensed hauler and disposal facility.

        B.      Engine Department operations also generate large quantities of oil contaminated machinery space bilge water, created when water mixes in the bottom of the vessel, known as the "bilges," with oil that has leaked and dripped from the machinery and the lubrication and fuel system for the engines. These "oily mixtures" are often referred to as "bilge waste," "bilge slops," and "slops from bilges," and are collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oily Water Separator and an oil-sensing device known as an Oil Content Monitor. Machinery space bilge water may be discharged overboard only after passing through an Oily Water Separator to ensure that it contains fifteen parts per million ("ppm") or less of oil, as measured by the Oil Content Monitor. If the Oil Content Monitor detects an oil content of greater than 15 ppm in the effluent, it sounds an alarm, and shuts down the pumps or diverts flow back to the bilges in order to prevent the discharge of greater than 15 ppm of oil overboard.

11.     The operation of large marine vessels like the *M/T Stavanger Blossom* generate garbage, including plastic, during its normal course of operation.

**D.     Legal Framework**

12.     The United States is part of an international regime that regulates the discharge of oil and garbage from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (together "MARPOL"). MARPOL is embodied in agreements that the United States has ratified and has been implemented in the United States by

the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901 *et seq*. APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. 33 U.S.C. § 1908. These regulations apply to all commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. 33 U.S.C. § 1902(a)(1)-(3).

13. MARPOL Annex I, *Regulations for the Prevention of Pollution by Oil,* established international standards governing the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under MARPOL, machinery space bilge water may be discharged overboard into the ocean only if it does not exceed 15 ppm of oil and the ship has in operation required pollution prevention equipment. This equipment includes: an oil filter, known as an Oily Water Separator; an alarm, known as an Oil Content Monitor; and an automatic stopping device, known as a Three-Way Valve. This equipment prevents the discharge of machinery space waste containing more than 15 ppm oil, the maximum legally permitted concentration of oil in the dischargeable mixture.

14. Consistent with the requirements contained in MARPOL, APPS regulations require that vessels such as the *M/T Stavanger Blossom* maintain a record known as an Oil Record Book in which the disposal and discharge overboard of sludge, oil residue, oily mixtures, and machinery space bilge water must be recorded. 33 C.F.R. § 151.25(d). Discharges from the machinery spaces must be fully and accurately recorded in the Oil Record Book without delay by the person in charge of the operations. 33 C.F.R. § 151.25 (d) and (h). The Oil Record Book also must record any emergency, accidental, or other exceptional discharges of oil or mixtures, including a

statement of the circumstances, and reasons for, the discharge. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained aboard the vessel for not less than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25 (k).

15. The requirements contained in MARPOL Annex V, *Regulations for the Prevention of Pollution by Garbage from Ships*, and APPS prohibit the discharge overboard of plastic or garbage mixed with plastic. 33 C.F.R. § 151.67. Vessels such as the *M/T Stavanger Blossom* must maintain a written record, known as a Garbage Record Book, in which the discharge overboard of all garbage must be recorded, including the date and time of the discharge, the latitude and longitude of the ship, the categories of the garbage involved, and the estimated amount of each category of garbage involved. 33 C.F.R. § 151.55(d). A record of each discharge must be made at the time of the operation and certified as correct by the master of the ship. 33 C.F.R. § 151.55(f).

16. The United States Coast Guard an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under Title 14, United States Code, Section 89(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. In conducting inspections, United States Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in Oil Record Books and Garbage Record Books. The United States Coast Guard is specifically authorized to examine a vessel and its Oil and Garbage Record Books for compliance with MARPOL and APPS. 33 U.S.C. § 1907(d); 33 C.F.R. § 151.23(a)(3) and (c); MARPOL Protocol, Annex V, Regulation 9(5); and 33 C.F.R. § 151.61(a) and (c).

E. **The Charges**

## COUNT ONE
### (Conspiracy – 18 U.S.C. § 371)

17. This Indictment re-alleges and incorporates by reference herein Paragraphs 1 through 16 and further charges:

Objectives of the Conspiracy

18. Beginning at a time unknown, but no later than on or about August 5, 2014, until on or about November 12, 2014, in the Port of Mobile, Alabama, and within the Southern District of Alabama, and elsewhere, the defendant

**DSD,**

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant DSD, and Defendants

**DANIEL PAUL DANCU,
BO GAO,
XIAOBING CHEN, and
XIN ZHONG**

and others known and unknown to the Grand Jury, did knowingly and willfully conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury:

    A. to knowingly fail to maintain an Oil Record Book for the *M/T Stavanger Blossom* in which all operations involving the transfer, discharge, and disposal of sludge, oil residue, oily mixtures, and machinery space bilge water were fully recorded, in violation of Title 33, United States Code, Section 1908(a); and Title 33, Code of Federal

7

Regulations, Section 151.25(a), (d), (e), (g), (h) and (j);

   B. with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, to knowingly conceal, cover up, and falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *M/T Stavanger Blossom* that concealed the disposal, transfer, and overboard discharges of sludge, oil residue, oily mixtures, and machinery space bilge water, and contained entries falsely stating that required pollution prevention equipment had been used when it had not; all in violation of Title 18, United States Code, Sections 1519 and 2;

   C. to corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security, in violation of Title 18, United States Code, Sections 1505 and 2.

<u>Manner and Means</u>

19. Among the manner and means used by Defendant DSD, acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant DSD, and by DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG, to effectuate this conspiracy and to further its objectives were the following:

8

A. Defendant DSD, owned, operated, and managed the *M/T Stavanger Blossom*, knowing the vessel was carrying a false Oil Record Book beginning at a time unknown, but no later than on or about August 5, 2014, until on or about November 12, 2014;

B. The defendants, DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG, served aboard the *M/T Stavanger Blossom*, knowing the vessel was carrying a false Oil Record Book, beginning at a time unknown, but no later than on or about August 5, 2014, until on or about November 12, 2014;

C. Defendants DSD, DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG, beginning at a time unknown, but no later than on or about August 5, 2014, until on or about November 12, 2014, used, and directed the use of, a bypass pipe, hoses, pumps, and plastic bags to dispose, transfer, and discharge overboard sludge, oil residue, oily mixtures, and machinery space bilge water;

D. Defendants DSD, DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG, beginning at a time unknown, but no later than on or about August 5, 2014, until on or about November 12, 2014, knowingly covered up by failing to record in the Oil Record Book the fact that sludge, oil residue, oily mixtures, and machinery space bilge water was disposed, transferred, and discharged overboard from the *M/T Stavanger Blossom*, and by falsely stating that required pollution prevention equipment had been used when it had not.

Overt Acts in Furtherance of the Conspiracy

20. On or about the dates below and in furtherance of the conspiracy and to effect the objects thereof, there was committed and caused to be committed by Defendants DSD, acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant DSD, and DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG, at least one of the following overt acts, among others:

**OVERT ACT 1:** Beginning at a time unknown, but no later than on or about August 5, 2014, until on or about November 12, 2014, the defendants DSD, DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG, and other members of the conspiracy, discharged and caused the discharge of sludge, oil residue, oily mixtures, and machinery space bilge water from the *M/T Stavanger Blossom* directly overboard into the sea, bypassing the ship's Oily Water Separator and other required pollution prevention equipment, without recording the discharge in the vessel's Oil Record Book as required.

**OVERT ACT 2:** Beginning at a time unknown, but no later than on or about August 5, 2014, until on or about November 11, 2014, defendants DSD, DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG and other members of the conspiracy, transferred, and caused the transfer, of sludge, oil residue, oily mixtures, and machinery space bilge water within the *M/T Stavanger Blossom* without recording the transfer in the vessel's Oil Record Book as required.

**OVERT ACT 3:** Between on or about October 26, 2014, and on or about October 30, 2014, defendants DSD and XIAOBING CHEN directed a subordinate to disconnect and remove a

bypass pipe that allowed the discharge of sludge, oil residue, oily mixtures, and machinery space bilge water from the M/T *Stavanger Blossom* directly overboard into the sea without using required pollution prevention equipment.

**OVERT ACT 4:** Between on or about October 26, 2014, and on or about October 30, 2014, defendants DSD and XIAOBING CHEN directed a subordinate to fabricate a new spool pipe, install it in place of the removed bypass pipe, and paint the new spool pipe to hide its installation.

**OVERT ACT 5:** On or about November 5, 2014, defendants DSD and XIAOBING CHEN directed subordinates to discard plastic bags containing sludge and oil residue overboard into the sea without recording the discharge in the vessel's Oil Record Book as required.

**OVERT ACT 6:** On or about November 12, 2014, defendants DSD, DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG and other members of the conspiracy, caused the M/T *Stavanger Blossom* to enter the Port of Mobile, Alabama, with a knowingly falsified Oil Record Book.

**OVERT ACT 7:** On or about November 12, 2014, defendants DSD and DANIEL PAUL DANCU and other members of the conspiracy, caused the Oil Record Book for the M/T *Stavanger Blossom* to be presented to the USCG in the Port of Mobile, Alabama.

**OVERT ACT 8:** Between on or about November 12, 2014, and on or about November 19, 2014, defendants DSD, XIAOBING CHEN, and XIN ZHONG and other members of the conspiracy, instructed crewmembers of the M/T *Stavanger Blossom* to falsely tell the United States Coast Guard that no plastic bags containing sludge and oil residue were discarded overboard, that all plastic bags remained aboard the vessel, and to provide the incorrect quantity of bags generated

on the vessel.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
**(Knowing Failure to Maintain Accurate Oil Record Book – Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a); Aiding and Abetting, 18 U.S.C. § 2)**

21. The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 16 of this Criminal Indictment and further charges that:

22. Between on or about August 5, 2014, and on or about November 12, 2014, in the Port of Mobile, Alabama, and within the Southern District of Alabama, and elsewhere, defendant

**DSD,**

by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD, and defendants

**DANIEL PAUL DANCU,
BO GAO,
XIAOBING CHEN, and
XIN ZHONG**

did knowingly fail to maintain, caused the failure to maintain, and aided and abetted the failure to maintain, an Oil Record Book for the *M/T Stavanger Blossom* in which disposals and transfers of sludge, oil residue, oily mixtures, and machinery space bilge water were required to be fully recorded. Specifically, the Defendants maintained, caused to be maintained, and aided and abetted the maintenance of, an Oil Record Book that (1) failed to record overboard discharges of oily mixtures and machinery space bilge water made without the use of an Oily Water Separator and oil monitoring equipment; (2) failed to record transfers of sludge, oil residue, oily mixtures, and

machinery space bilge water; and (3) failed to record the overboard discharge of sludge and oil residue.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; and Title 33, Code of Federal Regulations, Section 151.25(a), (d), (e), (g) (h), and (j).

## COUNT THREE
**(Knowing Failure to Maintain Accurate Garbage Record Book – Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a); Aiding and Abetting, 18 U.S.C. § 2)**

23. The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 16 of this Criminal Indictment and further charges that:

24. Between on or about November 5, 2014, and on or about November 12, 2014, in the Port of Mobile, Alabama, and within the Southern District of Alabama, and elsewhere, defendant

**DSD,**

by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD, and defendant

**XIAOBING CHEN**

did knowingly fail to maintain, caused the failure to maintain, and aided and abetted the failure to maintain, a Garbage Record Book for the *M/T Stavanger Blossom* in which disposals and overboard discharges of plastics were required to be fully recorded. Specifically, the Defendants maintained, caused to be maintained, and aided and abetted the maintenance of, a Garbage Record Book that failed to record the overboard discharges of plastic into the sea.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States

13

Code, Section 2; and Title 33, Code of Federal Regulations, Section 151.55.

## COUNT FOUR
**(Obstruction of Justice, 18 U.S.C. § 1519; Aiding and Abetting, 18 U.S.C. § 2)**

25. The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 16 of this Criminal Indictment and further charges that:

26. Between on or about August 5, 2014, and on or about November 12, 2014, in the Port of Mobile, Alabama, and within the Southern District of Alabama, and elsewhere, defendant

**DSD**,

by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD, and defendants

**DANIEL PAUL DANCU,
BO GAO,
XIAOBING CHEN, and
XIN ZHONG**

with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, did knowingly conceal, cover up, and falsify, and make false entries and omissions, and did knowingly aid and abet the concealment, cover up, falsification and making of false entries and omissions, in a record and document, that is, a false, fictitious, and misleading Oil Record Book for the *M/T Stavanger Blossom* that failed to record the disposal, transfer, and overboard discharge, of sludge, oil residue, oily mixtures, and

machinery space bilge water, and contained entries falsely stating that required pollution prevention equipment had been used when it had not.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FIVE
**(Obstruction of Justice, 18 U.S.C. § 1519; Aiding and Abetting, 18 U.S.C. § 2)**

27. The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 16 of this Criminal Indictment and further charges that:

28. Between on or about November 5, 2014, and on or about November 12, 2014, in the Port of Mobile, Alabama, and within the Southern District of Alabama, and elsewhere, defendant

**DSD,**

by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD, and defendant

**XIAOBING CHEN,**

with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, did knowingly conceal, cover up, and falsify, and make false entries and omissions, and did knowingly aid, abet, and cause the concealment, cover up, falsification and making of false entries and omissions, in a record and document, that is, a false, fictitious, and misleading Garbage Record Book for the *M/T Stavanger*

*Blossom* that failed to record the overboard discharge of and disposal of plastic.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT SIX
### (Obstruction of Justice – 18 U.S.C. § 1505)

29. The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 16 of this Criminal Indictment and further charges that:

30. Between on or about November 12, 2014, and on or about November 19, 2014, in the Port of Mobile, Alabama, and within the Southern District of Alabama, and elsewhere, defendant

**DSD,**

by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD, and defendant

**XIAOBING CHEN,**

did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security. Specifically, during the aforementioned period of time, and during a United States Coast Guard inspection of the *M/T Stavanger Blossom* to determine the vessel's compliance with MARPOL and United States law the defendants presented to the United States Coast Guard engine room equipment that had been altered to conceal the use of a bypass pipe to discharge overboard oily sludge, oily mixtures, slops from bilges, and bilge water that accumulated in machinery spaces, to wit: a "magic pipe" that connected to the

overboard discharge valve was removed and a spool pipe was installed and painted to hide the installation.

All in violation of Title 18, United States Code, Sections 1505 and 2.

## COUNT SEVEN
### (18 U.S.C. § 1512(b) – Witness Tampering)

31. The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 16 of this Criminal Indictment and further charges that:

32. Between on or about November 12, 2014, and on or about November 19, 2014, in the Port of Mobile, Alabama, and within the Southern District of Alabama, and elsewhere, defendant

**DSD,**

by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant, DSD, and defendants

**XIAOBING CHEN and
XIN ZHONG,**

knowingly used intimidation and corruptly persuaded another person, and attempted to intimidate and corruptly persuade another person, with intent to hinder, delay, and prevent the communication of information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States. Specifically, the defendants, XIAOBING CHEN and XIN ZHONG, directed subordinate crewmembers of the *M/T Stavanger Blossom* to tell members of the United States Coast Guard that as few as fifteen plastic bags containing sludge and oil residue were generated during the cleaning of the vessel's Fuel Oil

Sludge Tank, that all plastic bags remained aboard, and that no plastic bags were discarded overboard, knowing then and there that such a statement was untrue and that multiple plastic bags containing sludge and oil residue were discarded overboard.

All in violation of Title 18, United States Code, Section 1512(b).

A TRUE BILL

███████████████████████
FOREMAN UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

KENYEN R. BROWN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF ALABAMA

By: *(signature)*

MICHAEL D. ANDERSON
Assistant United States Attorney

*(signature)*

VICKI M. DAVIS
Assistant United States Attorney
Chief, Criminal Division

JOHN CRUDEN
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT & NATURAL
RESOURCES DIVISION

By: *(signature)*

SHANE N. WALLER
Trial Attorney
Environmental Crimes Section
United States Department of Justice

April 2015