IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| vs. ) | CRIMINAL NO. 15-00102-CG |
| ) | |
| DSD SHIPPING, AS, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on the motions of Defendants DSD Shipping, AS, Bo Gao, Xiaobing Chen, and Xin Zhong for judgment of acquittal or in the alternative, motion for new trial (Docs. 245, 246, 248, 250), the Government's response thereto (Docs. 252, 253), and Defendants' supplemental memoranda in support of acquittal and new trial (Docs. 254, 281, 285, 292, 297).  For the reasons explained below, the Court finds that Defendants' motions are due to be denied.

**I. Background**

A two-week jury trial was held in this matter beginning on October 26, 2015. On November 4, 2015, the Court denied Defendants' oral and written Rule 29 motions for judgment of acquittal made at the close of the Government's case-in-chief on November 3, 2015. (Docs. 226, 227, 228, 230).  The Defendants then rested before the jury without presentation of evidence.  At that close of all the evidence the Defendants' orally renewed motions for judgment of acquittal (Docs. 233, 234, 235, 236) were denied.  On November 6, 2015, the Jury returned verdicts of guilty

against DSD Shipping, AS as to the following offenses:

- conspiracy to violate 33 U.S.C. § 1908(a), 18 U.S.C. §1519 and 18 U.S.C. § 1505, in violation of 18 U.S.C. § 371 as charged in Count One of the Alabama Indictment;
- knowing failure to maintain accurate Oil Record Book in violation of 33 U.S.C. § 1908(a) and aiding and abetting in violation of 18 U.S.C. § 2 as charged in Count Two of the Alabama Indictment and Count One of the Louisiana Indictment;
- knowing failure to maintain accurate Garbage Record Book in violation of 33 U.S.C. § 1908(a) and aiding and abetting in violation of 18 U.S.C. § 2 as charged in Count Three of the Alabama Indictment;
- obstruction of justice in violation of 18 U.S.C. § 1519 and aiding and abetting in violation of 18 U.S.C. § 2 as charged in Counts Four and Five of the Alabama Indictment and Count 2 of the Louisiana Indictment; and
- witness tampering in violation of Title 18 U.S.C. § 1512(b) as charged in Count Seven of the Alabama Indictment;

(Doc. 243-1). The Jury also returned verdicts of guilty against Bo Gao as to the

following offenses:

- conspiracy to violate 33 U.S.C. § 1908(a) and 18 U.S.C. § 1519 in violation of 18 U.S.C. § 371 as charged in Count One of the Alabama Indictment;
- obstruction of justice in violation of 18 U.S.C. § 1519 and aiding and abetting in violation of 18 U.S.C. § 2 as charged in Count Four of the Alabama Indictment and Count Two of the Louisiana Indictment; and

(Doc. 243-2). The Jury returned verdicts of guilty against Xiaobing Chen as to the

following offenses:

- knowing failure to maintain accurate Garbage Record Book in violation of 33 U.S.C. § 1908(a) and aiding and abetting in violation of 18 U.S.C. § 2 as charged in Count Three of the Alabama Indictment;
- obstruction of justice in violation of 18 U.S.C. § 1519 and aiding and abetting in violation of Title 18 U.S.C. § 2 as charged in Counts Four and Five of the Alabama Indictment and Count Two of the Louisiana Indictment;
- witness tampering in violation of 18 U.S.C. § 1512(b) as charged in Count

Seven of the Alabama Indictment; and

(Doc. 243-3).  The jury returned verdicts of guilty against Xin Zhong as to the following offenses:

- knowing failure to maintain accurate Oil Record Book in violation of 33 U.S.C. § 1908(a) and aiding and abetting in violation of 18 U.S.C. § 2 as charged in Count Two of the Alabama Indictment and Count One of the Louisiana Indictment;
- obstruction of justice in violation of 18 U.S.C. § 1519 and aiding and abetting in violation of 18 U.S.C. § 2 as charged in Count Four of the Alabama Indictment and Count Two of the Louisiana Indictment;
- witness tampering in violation of 18 U.S.C. § 1512(b) as charged in Count Seven of the Alabama Indictment;

(Doc. 243-4).

## II. Motion for Acquittal

### A. Standard for Acquittal

Defendants moved for judgment of acquittal Pursuant to Rule 29(c), requesting that the Court set aside the guilty verdicts entered against them.  "A Defendant may move for judgment of acquittal, or renew such a motion within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." F. R. CRIM. P. 29(c)(1). A defendant is entitled to a judgment of acquittal when "the evidence is insufficient to sustain a conviction." See FED. R. CRIM. P. 29(a) (discussing standard for acquittal before submission to the jury).

> In considering a motion for the entry of judgment of acquittal under Federal Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction. See United States v. Sellers, 871 F.2d 1019, 1020 (11th Cir.1989). The district court must view the evidence in the light most favorable to the government. See id. (citing Glasser v. United

3

> States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), superceded by rule on other grounds, <u>Bourjaily v. United States</u>, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). The court must resolve any conflicts in the evidence in favor of the government, see <u>United States v. Taylor</u>, 972 F.2d 1247, 1250 (11th Cir.1992), and must accept all reasonable inferences that tend to support the government's case. See <u>United States v. Burns</u>, 597 F.2d 939, 941 (5th Cir.1979).2 The court must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. See <u>Sellers</u>, 871 F.2d at 1021 (citing <u>United States v. O'Keefe</u>, 825 F.2d 314, 319 (11th Cir.1987)). " 'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.' " <u>Sellers</u>, 871 F.2d at 1021 (quoting <u>United States v. Bell</u>, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc ), aff'd on other grounds, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)). A jury is free to choose among reasonable constructions of the evidence. See <u>Sellers</u>, 871 F.2d at 1021. The court must accept all of the jury's "reasonable inferences and credibility determinations." See <u>id.</u> (citing <u>United States v. Sanchez</u>, 722 F.2d 1501, 1505 (11th Cir.1984)).

<u>United States v. Ward</u>, 197 F.3d 1076, 1079 (11th Cir. 1999).

### B. Timeliness of Defendant Zhong's Motion

Defendant Xin Zhong filed his motion for judgment of acquittal or in the alternative for new trial on November 24, 2015. As stated above, "[a] Defendant may move for judgment of acquittal, or renew such a motion within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." F. R. CRIM. P. 29(c)(1). The jury returned their verdicts and was discharged on November 6, 2015. As such, Defendant Zhong's current motion is due to be denied as untimely. Even if the Court were to consider Zhong's motion or reconsider his earlier motion for acquittal, the Court finds it should be denied on the merits for the reasons discussed below.

4

**C. Offense of Failure to Maintain Record Books**

Defendants DSD, Chen and Zhong[1] contend that they cannot be held accountable for the failure to maintain the oil and garbage record books because only the master or person responsible for the ship has a duty to maintain the record books.  The Fifth Circuit recently held that the plain language of 33 C.F.R. 151.25 only requires the Master or other person having charge of the ship to maintain the an Oil Record Book. United States v. Fafalios, ---F.3d---, 2016 WL 1009126 (March 14, 2016).  "Chief engineers on foreign-flagged vessels cannot … be prosecuted simply for having previously failed to maintain an oil record book once a ship enters U.S. waters, since 33 C.F.R. § 151.25 assigns that duty explicitly and exclusively to the 'master or other person having charge of the ship.'" Id. at *6.  The regulation requiring the maintenance of a Garbage Record Book, 33 C.F.R. § 151.55, also specifies that "[t]he master or person in charge of a ship" shall ensure that a Garbage Record Book is maintained. 33 C.F.R. §151.55(a).   The individual Defendants in this case have not been shown to be the masters of the ship but instead consisted of the Chief Engineer, and the Second and Fourth Engineer.  As such, they, like the Chief Engineer in Fafalios, cannot be convicted for failing to maintain a record book in violation of §§ 151.25 or 151.55.  Defendant DSD also cannot be held vicariously liable for violating regulations that the individual employees did not violate.

---

[1] Defendant Bo Gao was not found guilty of any of the Counts that charged failure to maintain record books.

However, in Fafalios, the Fifth Circuit stated that chief engineers "may be prosecuted for aiding and abetting the failure to maintain an accurate record book, as the defendant in [United States v. Jho, 534 F.3d 398 (5th Cir. 2008)] was." Fafalios, 2016 WL 1009126 at *6. The Fafalios Court also stated that "[Chief engineers] can be prosecuted for making false statements to a Coast Guard investigator, as Fafalios was." Id. "[A]ny engineer who stands by his falsified records will expose himself to an obstruction charge, just as Fafalios did." Id. In the instant case, all of the counts that charge the failure to maintain record books include a charge for aiding and abetting the failure to maintain an accurate record book. The jury was instructed on aiding and abetting the failure to maintain accurate record books.[2] After reviewing the evidence, the Court finds there was sufficient evidence from which a jury could find that the Defendants aided and abetted the failure to maintain record books in violation of 18 U.S.C. § 2.

There was evidence that all of the individual Defendants were trained on the

---

[2] The jury charges included the following:
"[T]he guilt of a defendant in a criminal case may be proved without evidence that the defendant personally did every act involved in the commission of the crime charged. The law recognized that, ordinarily, anything a person can do for one's self may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort. ... [I]f a defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant had personally engaged in such conduct."
The jury was also instructed that "[t]he master or other persons having charge of the ship are responsible for maintaining the Oil Record Book and making it available for reasonable inspections" and that "[t]he regulations require that the garbage record ... be certified as correct by the master or person in charge of the ship."

MARPOL regulations. There was also evidence indicating that Defendant Chen knew of activities aboard the ship that should have been recorded and were not. Chen reportedly knew that the Fuel Oil Sludge Tank was cleaned and knew that sludge bags were thrown overboard. Chen did not make entries in the record books of the discharges and did not order his subordinates to make entries or inform Defendant Dancu of the activities so that they could be recorded. There was also evidence that Defendant Chen lied to the U.S. Coast Guard about the number of sludge bags.

There was evidence Defendant Zhong knew the correct quantities of waste oil in the vessel's storage tank and was responsible for and did in fact take soundings the tanks. Zhong reportedly reviewed and signed sounding logs and would input and review sounding data into a computer spreadsheet used by other officers. Zhong was also responsible for operating the Oily Water Separator and there was evidence he ordered the fabrication of equipment to bypass the Oily Water Separator and to discharge waste oil via the Soot Collecting Tank and that none of these activities were recorded in the record book. Zhong also reportedly threw bags of sludge from the vessel into the ocean. Zhong reportedly certified five months of incorrect sounding tank entries by signing his name next to each entry. Zhong also signed entries indicating that the Oily Water Separator was used to process bilge waste even though there was also evidence indicating the Oily Water Separator had been inoperable since 2010.

**D. Sufficiency of Evidence Against Defendant Gao Bo**

Defendant Bo Gao asserts that the government failed to present any evidence that ties him to any conspiracy.  Defendant Bo Gao points to the fact that Defendant Dancu testified that he never had any direct conversation with Defendant Bo Gao concerning the discharging of pollution or regarding the Oil Record Book or the operation of the Oily Water Separator.  Defendant Bo Gao also contends that there was insufficient evidence against him for obstruction of justice or aiding and abetting in the obstruction of justice.  Defendant Bo Gao states that there is no evidence that he made false entries or ordered anyone to make false entries in the Oil Record Book and Defendant Dancu was the chief engineer when the vessel entered port at Lake Charles, Louisiana and when it entered port in Mobile, Alabama.

However, there was evidence at trial that Defendant Bo Gao had knowledge of the correct tank soundings for the waste oil tanks and that he frequently signed the logs for the waste oil tanks.  The evidence indicated that the measurements recorded in the logs were inconsistent with the actual soundings taken by crewmembers.  Defendant Bo Gao's entries in the Oil Record Book were also inconsistent with the evidence that indicated that the Oil Water Separator had been inoperable since January 2010.  These reportedly false entries were all signed by Defendant Zhong and were consistent with the reported false entries entered by Defendant Dancu.  Defendant Dancu reported that Bo Gao directed Defendant Zhong to alter the computer sounding longs.  Accordingly, the Court finds that, viewing the evidence in the light most favorable to the Government, there was

8

sufficient evidence that Bo Gao conspired with others to fail to maintain an accurate Oil Record Book and to obstruct justice by making false entries.

### E. Sufficiency of Evidence Against Defendant Xiaobing Chen

In addition to Defendant Chen's contention that he cannot be convicted for failing to maintain a record book as discussed above, Chen contends that there is insufficient evidence to convict him of obstruction of justice or of aiding and abetting obstruction of justice. The Court finds that the same evidence discussed above with regard to the aiding and abetting of failing to maintain the record books also supplies sufficient evidence by which a jury could find that Defendant Chen with the intent to impede, obstruct, and influence the U.S. Coast Guard's investigation and proper administration, aided and abetted the concealment, cover up, falsification and making of false entries and omissions in the Oil and Garbage Record Books.

Defendant Chen also argues that there is insufficient evidence of witness tampering because there is no direct evidence that he knew the number of sludge bags actually generated. Chen contends that there is no evidence of his consciousness of wrongdoing, because Chen could have simply been relaying the number of sludge bags another crewmember reported. However, there was evidence indicating that there were as many as 100 bags and that Defendant Chen saw the bags and helped cover them up to hide them. There is also evidence indicating that Defendant Chen instructed crewmembers to tell the U.S. Coast Guard that there

were only 8 to 10 bags.  Accordingly, the Court finds that looking at the evidence in the light most favorable to the Government, there is sufficient evidence for a jury to find that Defendant Chen was guilty of witness tampering.

### F. Sufficiency of Evidence Against Xin Zhong

In addition to Defendant Zhong's contention that there is insufficient evidence of his failure to maintain the Oil Record Book, which was discussed above, Zhong also contends that there is insufficient evidence that he is guilty of witness tampering.  Zhong points to testimony that he was the last person to be interviewed by the U.S. Coast Guard and evidence that he was on duty in the engine room until his interview.  Zhong also points to the testimony by Johnathon Negre that he did not remember if it was Zhong or Chen that had instructed him to lie to the U.S. Coast Guard.   However, there was testimony that while a vessel was anchored, as it was during the time the U.S. Coast Guard conducted the interviews, the engine room does not need to constantly watched.  Defendant Zhong's assignment to the engine room did not preclude him from leaving the engine room and talking to crewmembers and still maintaining his duties on the vessel.  As the Government points out, even if Zhong's assignment required him to remain in the engine room, that does not rule out the possibility that he left his post.  A witness reported seeing Zhong outside the engine room while the other crewmembers were being interviewed and reportedly observed Zhong telling Negre to lie.  As such, the Court finds that looking at the evidence in the light most favorable to the Government, there is sufficient evidence for a jury to find that Defendant Zhong was guilty of

witness tampering.

### G. DSD's Vicarious Liability

DSD contends that the Government failed to introduce sufficient evidence to establish that DSD could be held vicariously liable for the acts of its employees and agents. DSD argues that there is no evidence that DSD's employees were acting with an intent to benefit DSD. As an example, DSD asserts that there is no evidence that Defendants Chen and Zhong were intending to confer any benefit to DSD when they allegedly instructed crewmembers to lie to the U.S. Coast Guard about the number of bags of sludge and oil residue. DSD also points to Defendant Dancu's testimony that he never informed DSD that the record books were false and deliberately withheld the information to protect his own job. For vicarious liability to apply, an agent must have acted with the intent to benefit the corporation. See Standard Oil Company of Texas v. United States, 307 F.2d 120 (5th Cir. 1962). An intent to benefit the corporation is required "to insulate the corporation from criminal liability for actions of its agents which be inimical to the interests of the corporation or which may have been undertaken solely to advance the interests of that agent or of a party other than the corporation." United States v. Automated Med. Labs., Inc., 770 F.2d 399, 407 (4th Cir. 1985) (citing Standard Oil, supra). "[A] corporation may not be held strictly accountable for acts that could not benefit the stockholders, such as acts of corporate officers that are performed in exchange for bribes paid to the officers personally." United States v. Cincotta, 689 F.2d 238, 242 (1st Cir. 1982). "[I]t is not necessary for an agent's actions to have actually

11

benefited the corporate entity." United States v. Automated Med. Labs., Inc., 770 F.2d 399, 407 (4th Cir. 1985) (citation omitted).  Whether the conduct actually resulted in a benefit to the corporation is evidential, but not an operative fact. Id. (citation omitted).  It is also possible for an agent to have acted for his own benefit while also acting for the benefit of the corporation." Automated Med. Labs, 770 F.2d at 407.

For vicarious criminal liability, the intent to benefit the master is an essential element of acting within the "scope of employment. See Cincotta, 689 F.2d at 241-42 ("[A]cting within the scope of employment ... requires that the agent be performing acts of the kind which he is authorized to perform, and those acts must be motivated-at least in part-by an intent to benefit the corporation." (citations omitted)); United States v. Beusch, 596 F.2d 871, 877 (9th Cir. 1979) ("The acts of an agent may be imputed to the principal... But only if it is the agent's purpose to benefit the principal, thus bringing his acts within the scope of his employment."). "[I]n general the servant's conduct is within the scope of his employment if it is of the kind he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, *at least in part*, by a purpose to serve the master." United States v. Gold, 743 F.2d 800, 823 (11th Cir. 1984) (emphasis in original) (quoting Prosser, Torts § 70 at 461 (4th ed. 1971)).  "If [an agent's act] is done with a view of furthering the master's business, of doing something for the master, then the expectation or hope of a benefit, whether direct or indirect, makes the act that of the principal." Standard Oil, 307 F.2d at 128.

12

In the instant case, the evidence indicated the employees were acting within the scope of their employment. Their conduct enabled the vessel to avoid stopping for repairs or to pay for proper disposal of wastes and their falsification of records protected DSD from prosecution by hiding the illegal conduct. The evidence indicated that the individual Defendants were acting with a view of furthering DSD's business. That the employees also wanted to avoid their own prosecution and protect their own jobs does not eliminate the benefit intended for the corporation. After reviewing the evidence in the light most favorable to the Government, the Court finds that there was sufficient evidence for the jury to find that the individual Defendants were acting within the scope of their employment for the benefit of DSD.

**H. Admission of Extrinsic Evidence**

DSD contends that it was denied a fair trial because the Government introduced stale extrinsic evidence. Specifically DSD objects to the introduction of a January 2010 Handover memorandum that stated that the Oily-Water Separator aboard the vessel did not function properly and to testimony relating to events that allegedly occurred more than a year before the relevant time period. Prior to trial DSD moved to exclude evidence of other bad acts including the 2010 Handover memorandum. (Doc. 203). During the trial DSD also requested that the jury instructions include the Eleventh Circuit's pattern jury instruction on similar acts evidence. The Court denied DSD's jury instruction request, stating that the evidence "is evidence of the company's knowledge of the criminal conspiracy, the

inception of the company's knowledge … and so it's really part of the res gestae, although it's outside the date alleged in the indictment. I think [the evidence] is intrinsic too."

As an initial matter, the Government points out that DSD's contention regarding the asserted extrinsic evidence is not properly before the court on a Rule 29 motion. United States v. Torkington, 874 F.2d 1441, 1444 (11th Cir. 1989) ("Rule 29(a) by its express terms includes two requirements. First, the motion can be granted only after the prosecution has presented its case. Second, the court must find the evidence insufficient to support a conviction."). Even if DSD's legal argument was reviewable under Rule 29, the Court finds that the inclusion of the evidence did not result in an unfair trial.

The Alabama indictment charged the Defendants with conspiracy "beginning at a time unknown, but no later than on or about August 5, 2014…" (Doc. 1, p. 7). The evidence offered at trial indicated that the Oily-Water Separator was inoperable in January 2010 and that the crewmembers began bypassing the Oily-Water Separator when it became inoperable. Moreover, evidence of criminal activity is not extrinsic under Rule 404(b) if it consists of the same series of transactions or was part of the same chain of events leading up to the offenses charged. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998). As the McLean Court explained:

> Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a

14

>    person in order to show action in conformity therewith." However,
>       [e]vidence of criminal activity other than the charged
>       offense is not extrinsic under Rule 404(b) if it is (1) an
>       uncharged offense which arose out of the same
>       transaction or series of transactions as the charged
>       offense, (2) necessary to complete the story of the crime,
>       or (3) inextricably intertwined with the evidence
>       regarding the charged offense.
>    United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir.1995).
>    "Evidence, not part of the crime charged but pertaining to the chain of
>    events explaining the context, motive and set-up of the crime, is
>    properly admitted if linked in time and circumstances with the
>    charged crime, or forms an integral and natural part of an account of
>    the crime, or is necessary to complete the story of the crime for the
>    jury." United States v. Williford, 764 F.2d 1493, 1499 (11th Cir.1985).
>
> McLean, 138 F.3d at 1403.

In the instant case, the Court finds that the evidence was not extrinsic. The 2010 Handover memorandum established that the Oily-Water Separator was not operational in January 2010 and that DSD knew it was inoperable at that time. The testimony corroborated the memorandum and explained how the ship handled oil wastes when the Oily Water Separator was not operational and described when the ship began falsifying the Oil Record Book. The evidence explained the context and set up of the alleged crime and established DSD's knowledge. As such, the Court finds it did not err in allowing the evidence.

## II. New Trial

Defendants move in the alternative for a new trial pursuant to Rule 33. Rule 33 of the Federal Rules of Criminal Procedure empowers a district court to vacate a judgment and grant a new trial if the interest of justice requires. FED. R. CRIM. P.

15

33(b). There are two grounds upon which a court may grant a motion for new trial: one based on newly discovered evidence; and "the other based on any other reason, typically the interest of justice [.]" United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006). The decision whether to grant or deny such a motion rests in the sound discretion of the trial court. United States v. Champion, 813 F .2d 1154, 1170 (11th Cir.1987).  Under Rule 33, the Court "may weigh the evidence and consider the credibility of witnesses." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).  "In evaluating a motion for a new trial, [a] district court need not view the evidence in the light most favorable to the verdict." United States v. Ward, 274 F.3d 1320, 1323 (11th Cir. 2001) (citations and internal quotations omitted). However, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.  The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Martinez, 763 F.2d at 1312–13.  Motions for new trials should be granted "sparingly," and only granted in "those really 'exceptional cases.'" Id. at 1313.

After a review of the pleadings, the Court finds that the arguments provide no meritorious basis for the Court to grant a new trial.  Accordingly, for the for the reasons stated on the record during trial and for the reasons set forth in the Government's brief in Response (Doc. 253), the Court finds that the alternative motions for new trial should be denied.

## CONCLUSION

For the reasons stated above, the motions of Defendants DSD Shipping, AS, Bo Gao, Xiaobing Chen, and Xin Zhong for judgment of acquittal or in the alternative, motion for new trial (Docs. 245, 246, 248, 250), are **DENIED**.

**DONE** and **ORDERED** this 6th day of April, 2016.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE